IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN J. RODVOLD, | ) | CASE NO. 3:14 CV 2007 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ALAN LAZAROFF, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Steven J. Rodvold for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Rodvold was convicted by a Huron County Common Pleas Court jury in 2010 of murder with a gun specification[3] and is serving 15 years to life, plus an additional 3 years for the firearm specification, for an aggregate sentence of 18 years to life. He is currently incarcerated at the Marion Correctional Institution in Marion, Ohio.

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Dan Aaron Polster by non-document order dated September 18, 2014.

[2] ECF # 1; *see* 28 U.S.C. 2254 (2012).

[3] ECF #11, Attachment 1 at 125.

Rodvold raises three grounds for habeas relief.[4] The State, in its return of the writ contends that Ground Two should be denied as without merit, and Grounds One and Three be dismissed as a procedurally defaulted claims.[5] Rodvold has not filed a traverse.

For the reasons that follow, I will recommend Rodvold's petition be dismissed in part and denied in part.

## Facts

**A.     Underlying facts, conviction, and sentence**

The relevant facts by the Ohio appeals court emerge from its review of the record.[6]

In September 2009, Rodvold was indicted on one count of aggravated murder and one count of murder, both resulting in the shooting death of Rodvold's father, Keith Rodvold.[7]

A jury trial took place in the matter beginning on May 11, 2010, and ending on May 19, 2010.[8]  The first two days of the trial were devoted to jury selection.[9]  Review of the record reveals that the majority of the potential jurors who purported to have any measure of particularized knowledge about the case were excused for cause.[10] Of those who were not

---

[4] ECF # 1.

[5] ECF # 11.

[6] ECF #11, Attachment 1 at 223.

[7] *Id*. at 224.

[8] *Id*.

[9] *Id*.

[10] *Id*.

excused, the trial court stated for the record, "Even with the few folks that had some detailed information, I think those folks have been thoroughly questioned."[11]

During the evidentiary portion of the trial, evidence of the following was adduced.[12] Rodvold lived with his father in their house located in New London, Ohio.[13]  He began living in the house when he was ten years old.[14] At the age of 18, having only reached the tenth grade, Rodvold left school and joined the army.[15] He remained in the service for the next seven and one-half years.[16]

In 2008, Rodvold left the army and, having nowhere else to go and nothing else to do, returned to Ohio to live with his father.[17]  He secured unemployment benefits for a time and spent his military savings.[18]  Eventually Rodvold obtained employment at a water park and a fish hatchery, but quit both jobs within a very short period of time.[19]

---

[11] *Id*.

[12] *Id*. at 225.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] *Id*.

By the time Rodvold left his job with the fish hatchery, he was low on money and angry with his father, who had suggested that since he didn't have any real skills, he should consider reenlisting in the army.[20]   Rodvold withdrew unto himself, refusing to eat his father's food and severing relations with his grandparents.[21]  He also secured a concealed carry permit, and began wearing a gun around the house.[22] Rodvold claimed that his father wanted him out of the house and that he had to wear the gun for his protection while staying there.[23]

On the day of the homicide, Rodvold's father spent the morning completing a roof job with his friend, Bennie Bong.[24]  The two returned the Rodvold residence approximately 1:00 p.m.[25]  Bong helped the elder Rodvold put away the equipment and then left the premises.[26]

That same afternoon, Rodvold received in the mail the result of an initial unemployment appeal denying his claim.[27]  Rodvold reacted to the denial by calling the state

---

[20] *Id*.

[21] *Id*. at 225-226.

[22] *Id*. at 226

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

-4-

unemployment offices twice, first around 2:00 p.m., and the other around 4:00 p.m.[28] During the calls, he threatened the workers that he would be forced to go out and kill people, and that he had a truck full of guns and ammunition.[29]

Following the first call at 2:00 p.m., the state unemployment officials first contacted the state highway patrol and then the Huron County sheriff who alerted Huron County Job & Family Services.[30]  Shortly before 5:00 p.m., the sheriff instructed the dispatchers to send deputies to the Rodvold home.[31]  Two unrelated calls prevented the deputies from getting to the home before the shooting.[32]

After the first call to unemployment, Rodvold went outside and fired some rounds into a dead tree in his backyard.[33]  He then changed guns, arming himself with a more reliable weapon.[34]  Rodvold testified that after making the second call to unemployment, he went outside with a pen and paper intending to write a letter to unemployment with additional information to support his claim.[35]

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 227.

[34] *Id.*

[35] *Id.*

Rodvold further testified that while he was in the backyard writing this letter, his father joined him.[36]  Sitting on the deck, Rodvold's father drank a cup of coffee and attempted to engage in small talk, but Rodvold testified that he did not want to speak with his father, and wanted to be left alone.[37]  Rodvold's father asked him what he had received in the mail that day.[38]  Rodvold testified that he responded that he received a letter rejecting his unemployment appeal and that an argument between the two ensued.[39]

Telephone records reveal an apparent attempt by Rodvold to call unemployment a third, and final time, at approximately 5:00 p.m.[40]  Following the attempted phone call, Rodvold shot his father six times.[41]  Rodvold's father's body was found lying on the deck, without a weapon and with his blood-spattered mug, cell phone and glasses lying next to him.[42]

Rodvold told police that after "emptying his gun" into his father, he reloaded the gun and made his way around his father's lifeless body to cut a hole in the adjacent screen door

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

to search for Bennie Bong.[43]   Finding no one else at the residence, he called 911 at approximately 5:37 p.m.[44]

At trial, Rodvold testified that he shot his father because at some point in their argument, threatened to shoot him.[45]  He initially told police that from where he was standing in the yard at the time the threat was made, he could see his father's prized Kimber handgun laying out in the open house.[46]   On that basis, he thought the threat was real and, as a result, killed his father.[47]

After police pointed out to Rodvold that the Kimber could not, in fact, be seen from where he claimed to have been standing during the altercation, Rodvold changed his story, this time saying that his father expressly stated to him that he loaded the Kimber and was going to kill him with it.[48] At trial, Rodvold retreated from the latter version of the story, conceding on cross-examination that he no longer remembered his father saying those words.[49]

---

[43] *Id.* at 227-228.

[44] *Id.* at 228.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

Following the presentation of evidence, the jury found Rodvold guilty of murder and the attendant gun specification.[50]  The trial court sentenced him to fifteen years to life in prison, together with the three-year mandatory, consecutive sentence for the gun specification.[51]

**B.      Direct appeal**

*1.      Ohio Court of Appeals*

Rodvold, through counsel, filed a timely[52] notice of appeal[53] with the Ohio Court of Appeals. In his brief, Rodvold raises the following five (5) assignments of error:

1.      Appellant was prejudiced by the court's failure to excuse one of the jurors for cause, & the resulting composition of the jury denied him of his constitutional right to an impartial jury.

2.      The trial court abused its discretion & denied appellant his right to a fair trial by an impartial jury when it overruled his motion for a change of venue.

3.      Appellant was denied effective assistance of counsel as guaranteed by the Ohio & U.S. Constitution due to counsel's cumulative failures to adequately advocate appellant's defense & to present such skill & knowledge as would render confidence in the fairness of appellant's trial & its verdict.

---

[50] *Id.*

[51] *Id.*

[52]  Under Ohio App. R. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed.  See , *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case). Rodvold's conviction and sentence were journalized on May 20, 2010. *(Id.* at 127), and his appeal to the Ohio court of appeals was filed on June 21, 2010.

[53] *Id*. at 132.

4.      The trial court's above errors, when taken together, deprived appellant of a fair trial as guaranteed by the Ohio & U.S. Constitutions' due process clauses.

5.      The verdict was against the manifest weight of the evidence.

The state filed a brief in response.[54]   Rodvold filed a brief in reply attaching the competency evaluation filed under seal in the trial court.[55]   On February 17, 2012, the Sixth District Court of Appeals overruled Rodvold's assignments of error and affirmed the decision of the trial court.

## 2.      *Supreme Court of Ohio*

Rodvold, *pro se*, thereupon filed a timely[56] notice of appeal with the Ohio Supreme Court.[57]   In his memorandum in support of jurisdiction, he raised the following propositions of law:

1.      Appellant was prejudiced by the court's failure to excuse one of the jurors for cause, and the resulting composition of the jury denied him of his constitutional right to an impartial jury.

2.      The trial court abused its discretion & denied his right to a fair trial by an impartial jury when it overruled his motion for a change of venue.

---

[54] *Id*. at 165.

[55] *Id.* at 194.

[56] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). Here, the appellate judgment was entered on February 17, 2012, and the notice of appeal filed in the Supreme Court on March 28, 2012.

[57] *Id.* at 243.

3.      The appellant was denied effective assistance of counsel as guaranteed by the Ohio & U.S. Constitutions due to counsel's cumulative [sic] failures to adequately advocate appellant's defense & to present such skill & knowledge as would render confidence in the fairness of appellant's trial and it's verdict.

4.      The trial court's above errors, when taken together, deprived appellant of a fair trial as guaranteed by the Ohio & U.S. Constitutions due process clauses.

5.      The verdict was against the manifest weight of the evidence.

On June 20, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not having any substantial constitutional questions.[58]

## C.      Rule 26(B) application

On May 14, 2012, Rodvold, *pro se*, filed an application pursuant to Ohio Appellate Rule 26(B) to reopen his appeal based on ineffectiveness of appellate counsel[59]  The State did not file a brief in response, [60] and on January 31, 2013, the Ohio appeals court denied the application to reopen.[61] Rodvold failed to properly file an appeal in the Supreme Court of Ohio.

## D.      Post-conviction relief

On August 5, 2011, while his direct appeal was pending before the Ohio appeals court, Rodvold, *pro se*, filed a petition to vacate or set aside judgment the judgment of the

---

[58] *Id*. at 279.

[59] *Id.* at 280.

[60] *Id*. at 1.

[61] *Id.* at 324.

trial court.[62] On February 6, 2013, Rodvold moved to supplement his petition to add an additional ground.[63]

Rodvold also filed a motion for the appointment of specific counsel requesting his former appellate counsel on direct review,[64] a motion for summary judgment,[65] declaratory judgment on the pleadings,[66] and judgment on the pleadings.[67]  In addition, Rodvold also moved for a finding of facts and conclusions of law.[68] The State responded to Rodvold's amended petition and his request for appointment of counsel.[69] The State also filed a response to Rodvold's petition to vacate or set aside sentence.[70] On March 14, 2013, the trial court denied the petition.[71]

---

[62] *Id.* at 331.

[63] *Id*. at 424.

[64] *Id* at 435.

[65] *Id*. at 436.

[66] *Id*. at 437.

[67] *Id.* at 438.

[68] *Id*. at 439.

[69] *Id.* at 440.

[70] *Id.* at 443.

[71] *Id*. at 453.

On April 4, 2013, Rodvold, *pro se*, filed a timely notice of appeal to the Sixth District Court of Appeals.[72]  In his merit brief,[73]Rodvold raised the following assignments of error:

1. Counsel violated appellant's 14th and 6th U.S. Constitutional Amendment rights by failing to investigate 'Battered Person Syndrome' as the prosecutor did previously using O.R.C. 2901.06, allowing perception [*sic*]of lack of credibility to be seen against the defendant.

2. The improper application of the full 'Castle Doctrine' or O.R.C. 2901.09 was due to counsel's failure to research and investigate violating his 2nd, 6th U.S. Constitutional Amendment Rights.

3. Due to counsel's failure to investigate scene issues the fear element was viewed not credible per O.R.C. 2901.05 violating defendant's 2nd and 14th U.S. Constitutional Amendment rights.

4. O.R.C.'s 2901.22 and O.R.C. 2923.03(A)(E) were not applied properly due to counsel's ineffectiveness allowing focus to shift from the 'mens rea' to the State's own morals and tactical opinions in clear violation of his 2nd and 14th U.S. Constitutional Amendment rights.

5. Abuse of discretion [*sic*] of the trial court improperly ruling on the timely filed post conviction petition favoring the State's responses that even admit the defendant is correct violating his 2nd, 6th, and 14th U.S. Constitutional Amendment rights.

The State filed a brief in response.[74] On October 25, 2013, the Sixth District Court of Appeals denied the petition.[75] Rodvold did not appeal that decision.

---

[72] *Id*. at 458.

[73] *Id.* at 465.

[74] *Id.* at 481.

[75] *Id.* at 501.

**E.  Federal habeas corpus petition**

On September 10, 2014, Rodvold, *pro se*, timely filed[76] a federal petition for habeas

relief.[77]  In his petition, Rodvold raises three grounds for relief:

GROUND ONE:  Petitioner was denied the effective assistance of counsel as guaranteed by the U.S. Constitution due to counsel's failure to adequately advocate Petitioner's defense and to present such skill and knowledge as would render confidence in the fairness of the trial and verdict.

Supporting Facts:  Counsel violated appellant's 14th and 6th U.S. Constitutional rights by failing to investigate 'Battered Person Syndrome' as the prosecutor did previously using O.R.C 2901.06, allowing perception of lack of credibility to be seen against the defendant.

Petitioner asserts that his trial counsel was ineffective for failing to: (1) present a defense; (2) present expert witness testimony; (3) investigate; and (4) properly cross-examine a prosecution witness.

The improper application of the full 'Castle Doctrine' or O.R.C. 2901.09 was due to counsels failure to research and investigate violating his Sixth U.S. Constitutional Amendment rights.

GROUND TWO:  Petitioner was denied a fair trial as guaranteed by the U.S. Constitution's Due Process clauses due to the trial court's cumulative errors.

Supporting Facts:  The trial court abused its discretion and denied appellant his right to a fair trial by an impartial jury when it overruled his motion for a change of venue.

Appellant was prejudiced by the court's failure to excuse one of the jurors for cause, and the resulting composition of the jury denied him of his constitutional right to an impartial jury.

---

[76] The present petition for federal habeas relief was filed on September 10, 2014, ECF #1. As such, it was filed withing the one year conclusion of Rodvold's' direct appeal in the Ohio courts and so it is timely under 28 U.S.C. § 2254(d)(1).

[77] ECF #1.

-13-

GROUND THREE: Petitioner was denied effective assistance of appellate counsel as guaranteed by the U.S. Constitution.

Supporting Facts: Ineffective assistance of appellate counsel when his attorney did not raise and argue that: 1) trial counsel's ineffectiveness for failure to (a) renew a motion *in limine*, (b) to object to certain jury instructions, (c) to question a witness properly, and; (d) to object to certain remarks by the prosecutor in closing argument; 2) trial counsel's ineffectiveness for failure to raise and argue (a) prosecutor misconduct in terms of the prosecutor's failure to present an expert witness to show the proper *mens rea* element of the crime charged, and (b) for failing to make various contentions about weapons; 3) trial counsel's ineffectiveness for failure to argue insufficiency of the evidence.

## Analysis

### A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Rodvold is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[78]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[79]

3.    In addition, Rodvold states,[80] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[81]

---

[78] *See* 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[79] *See* 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (2000).

[80] ECF # 1 at 3.

[81] *See* 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (2006).

4.      Moreover, subject to the procedural default arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[82]

5.      Finally, Rodvold has not requested the appointment of counsel,[83] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[84]

## B.      Standards of review

### 1.      *AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[85] codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.[86]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[87]

---

[82] *See* 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[83] *See* 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[84] *See* 28 U.S.C. § 2254(e)(2).

[85] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[86] *See* 28 U.S.C. § 2254 (2012).

[87] 28 U.S.C. § 2254(d) (2012).

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[88] and "difficult to meet,"[89] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[90]

a.      "Contrary to" or "unreasonable application of" clearly established federal law

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[91]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[92] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[93] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[94]  A state court's decision does not rise to the level of being "contrary to" clearly

---

[88] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[89] *Id.* (citation omitted).

[90] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[91] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[92] *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[93] *Id.*

[94] *Id.*

established federal law simply because that court did not cite the Supreme Court.[95]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[96]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[97]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[98]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[99]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[100]  To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

---

[95]  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[96]  *Id.*

[97]  *See id.*

[98]  *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[99]  *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[100]  *Id.*

-17-

disagreement."[101]  Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.      *"Unreasonable determination" of the facts.*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[102]  Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[103] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[104] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[105] it is indeed a difficult standard to meet.  "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual

---

[101]  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[102]  *Brumfield*, 135 S.Ct. at 2277.

[103]  28 U.S.C. § 2254(e)(1) (2012).

[104]  *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[105]  *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

-18-

findings and to substitute its own opinions for the determination made on the scene by the trial judges."[106]

## 2.    *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review.[107]  Such a claim is subject to procedural default if a petitioner failed to raise it when state court remedies were still available, the petitioner violated a state procedural rule.[108]  The petitioner must afford the state courts "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[109]  This requires a petitioner to go through "one complete round" of the state's appellate review process,[110] presenting his or her claim to "*each* appropriate state court."[111]  A petitioner may not seek habeas relief then if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[112]

When a state asserts a that violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part to test

---

[106] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[107] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[108] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[109] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[110] *Boerckel*, 526 U.S. at 845.

[111] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[112] *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted).

determine whether the claim is procedurally defaulted.[113]  A petitioner's violation of a state procedural rule will bar federal review if the state procedural rule satisfies the standards set out in the test:[114]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[115]

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[116]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[117] that is both 'firmly established and regularly followed.'"[118]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[119]

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[120]  In order to show "prejudice" for the default, the petitioner must show that the errors

---

[113]  *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *see Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[114]  *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[115]  *Id.* (citing *Maupin*, 785 F.2d at 138).

[116]  *Id.*

[117]  *Id.* (quoting *Maupin*, 785 F.2d at 138). ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732).

[118]  *Id.* (citation omitted).

[119]  *Id.* (quoting *Coleman*, 501 U.S. at 750).

[120]  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[121]

Additionally, "a credible showing of actual innocense" may also excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[122]

Notwithstanding these elements, the Supreme Court has held that a federal habeas court need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[123]

## C.     Application of standards

### 1.     *Ground One - ineffective assistance of trial counsel - should be dismissed as procedurally defaulted.*

Ground One contains two alleged instances of ineffective assistance of trial counsel - a purported failure of counsel to present evidence that Rodvold suffered from battered child syndrome and an asserted failure of trial counsel to properly investigate and cross-examine a prosecution witness. For different reasons, each claim should be considered procedurally defaulted and then dismissed.

---

[121] *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

[122] *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

[123] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) ("[O]n occasion [the Sixth Circuit] has reached beyond the procedural-default analysis to address the underlying claim on the merits when it presents a more straightforward ground for decision.") (citation omitted).

As to the battered child defense, the State observes that although Rodvold raised this claim to the Ohio appeals court, he failed to then make this argument to the Supreme Court of Ohio on direct appeal, thereby waiving it.[124] Moreover, although Rodvold attempted to raise this claim again in his later petition to vacate, the Ohio appeals court refused to consider it, finding that the claim had been previously raised and adjudicated, and that further review was barred by the doctrine of *res judicata*.[125]

In both instances, Rodvold procedurally defaulted the battered child portion of this claim. His failure to raise the issue before the Ohio Supreme Court on direct appeal means that he has failed to afford that court an opportunity to consider this issue, since, under *res judicata*, the Ohio Supreme Court will not permit Rodvold to return to that court with an issue he failed to include in his earlier direct appeal.[126] Similarly, the Ohio appeals court also cited *res judicata* as the reason it would not consider this claim in the context of the petition to vacate, inasmuch as Rodvold had already presented that claim to that court in the direct appeal.[127]

Similarly, Rodvold procedurally defaulted that portion of Ground One alleging a failure to properly cross-examine a prosecution witness. As the State observes, Rodvold completely failed to raise this claim on direct appeal, or in the post-conviction motion to

---

[124] ECF # 11 at 18-19.

[125] *See, id*. at 20, fn. 3.

[126] *State v. Perry,* 10 Ohio St.2d 175, 180-81 (1967).

[127] ECF # 11, Attachment at 504-505.

vacate.[128]As such, this claim could not now be presented to Ohio courts under the *res judicata* doctrine, and that claim would be deemed to be procedurally defaulted by a federal habeas court.

Finally, as to the allegations that defense counsel was also ineffective for failing to investigate the crime and for failing to present a meritorious defense, I note that these arguments were not presented to the state appeals court on direct review,[129] nor were they part of Rodvold's appeal to the Supreme Court of Ohio.[130] As such, these claims are also procedurally defaulted.

It is well-recognized that Ohio's *res judicata* rule is an adequate and independent state law basis for precluding federal habeas review.[131] Similarly, to the extent the default here rests on waiver, that ground is also recognized as an adequate and independent state law basis for procedural default.[132] In addition, I note that Rodvold has not presented any cause or prejudice that might excuse the default, nor made an argument of actual innocence.

Therefore, Ground One be should be dismissed as procedurally defaulted.

---

[128] ECF # 11 at 21.

[129] *See*, ECF # 11, Attachment at 142.

[130] *See, id*. at 248-49 (setting out the 4 alleged grounds of ineffective assistance).

[131] *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006).

[132] *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

**2.    *Ground Three - ineffective assistance of appellate counsel - while arguably procedurally defaulted, should be addressed on the merits and denied after AEDPA review.***

In this ground for relief, Rodvold contends that he was denied the effective assistance of appellate counsel for three reasons:

(1) failure to argue that trial counsel was ineffective in failing to renew a motion in limine, to object to jury instructions, to properly question a witness, and for failing to object to the prosecution's remarks in the closing statement;

(2) failure to argue that trial counsel was ineffective for not arguing prosecutorial misconduct in terms of the prosecution's purported failure to present an expert witness as to *mens rea*, and failing to raise issues about whether knives were a deadly weapon;

(3) failure to allege that trial counsel did not argue insufficiency of the evidence.[133]

Rodvold raised these claims in his Rule 26(B) motion to reopen the appeal,[134] whereupon they were considered on the merits by the Ohio appeals court and denied.[135] But, Rodvold did not then timely file an appeal from that judgment with the Supreme Court of Ohio.  Rodvold may not now bring such an appeal, because the Ohio Supreme Court does not permit delayed appeals in Rule 26(B) proceedings.[136]

---

[133] ECF # 1, Attachment at 57-72.

[134] ECF # 11, Attachment at 281.

[135] *Id*. at 324-330.

[136] Ohio Supreme Court Rule of Practice 7.01(A)(4)(c).

While the State maintains that Rodvold has therefore procedurally defaulted this claim, Rodvold argues that he can overcome such a default by showing that cause for the later filing. Specifically, he contends that he delivered his material for an appeal from the appellate court's denial of his Rule 26(B) application five days before the filing was due at the Supreme Court of Ohio, but the filing did not arrive until one day after the time had expired, resulting in the matter not being considered.[137] In support of this, Rodvold supplies an affidavit to that effect, and has supplied a number of dated receipts from his prison account reflecting payment for multiple mailings.[138]

Rodvold's direct appeal of the motion to vacate was decided on January 31, 2013, and so any appeal to the Ohio Supreme Court from that decision would necessarily have to have been submitted to the prison mail system within 45 days of that date, or by March 16, 2013. A review of the receipts provided by Redvold himself show a receipt for funds to pay for a judicial mailing dated March 11, 2013, or five days before the appeal was due at the Ohio Supreme Court.  The Sixth Circuit has held that the submission of an appeal to the prison mail system five days before the appeal is due to be filed can support a showing of "cause" to excuse a procedural default arising from the late filing of that appeal.[139] Therefore, because

---

[137] ECF # 1 at 21-25.

[138] *See*, ECF # 3 (a May 13, 2013 receipt), ECF # 18 (receipts from May 13, 2103; April 29, 2013; April 8, 2013; March 23, 2012; and two dated March 11, 2013).

[139] *See, Henderson v. Palmer*, 730 F.3d 554, 560-61 (6th Cir. 2013)

Rodvold made his claim in a sworn affidavit,[140] as well as provided evidence in the form of a receipt to support the claim, he has provided cause to excuse his procedural default.

Without now considering the question of whether Rodvald can also show prejudice resulting from the federal habeas court not addressing these claims, the claims here were discussed on the merits and rejected by the Ohio appeals court in a decision that was not an unreasonable application of clearly established federal law. Accordingly, noting the difficulties of fully resolving the entire procedural default issue in this case, and I will proceed to the consideration of ground three on the merits.[141]

As noted, these issues of ineffective assistance of appellate counsel were addressed by the Ohio court of appeals and rejected in the following analysis:

> To justify re-opening an appeal, the applicant "bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998); *see also*, *State v. Smith*, 95 Ohio St.3d 127, 2002-Ohio-1753, 766 N.E.2d 588, ¶ 7. "The two-pronged analysis found in *Strickland v. Washington* (1984), 466 U.S. 668 * * * is the appropriate standard to assess whether [appellant] has raised a 'genuine issue' as to the ineffectiveness of appellate counsel." *Id*. at ¶6.
>
> In order to prevail under this standard, Rodvold must demonstrate not only that the performance of his appellate counsel was deficient, but also that he was prejudiced by that deficiency. *Strickland* at 687; *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, 107; App.R. 26(B)(2)(d). "Deficient performance" means performance failing below an

---

[140] ECF # 3.

[141] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

objective standard of reasonable representation under prevailing professional norms." *Strickland* at 688. "Prejudice," in this context, is defined as errors by appellate counsel that were so serious there is a reasonable probability that, but for those errors, the result of the appeal would have been different. *Id*. at 687-688, 694.

\* \* \*

Ohio Law presumes the competence of a properly licensed attorney at both the trial and appellate level. *State v. Lott*, 51 Ohio St.2d 160, 555 N.E.2d 293 (1990).  Similarly, *Strickland* charges us to "apply[] a heavy measure of deference to counsel's judgments," 466 U.S. at 691, and to "indulge a stromg presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. At 689. Moreover, appellate counsel need not raise every possible issue in order to render constitutionally effective assistance. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *State v. Sanders*, 94 Ohio St.3d 150, 761 N.E.2d 18 (2002).  In light of this presumption Rodvold must specifically show how "[appellate] counsel was deficient for failing to raise the issues he now presents, and that there was a reasonable probability of success had [counsel] presented those claims on appeal." *State v. Mack*, 101 Ohio St.3d 397, 2004-Ohio-1526, 805 N.E.2d 1108 ¶5, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

\* \* \*

Having reviewed Rodvold's four proposed assignments thoroughly, we find that none have merit.  More to the point, they do not meet the standard of App.R.26(B). None rais "*a genuine issue* as to whether [he] was deprived of the effective assistance of counsel on appeal" or rebut the presumption of competency. App.R.26(B)(5). (Emphasis added.)

With only little variation in citing to different alleged failures, Rodvold's first proposed assignment merely rehashes arguments that were made and rejected in the first appeal relating to effective assistance of trial counsel.  As we indicated then, such

-27-

decisions go to trial strategy, and "[c]ourts have consistently declined to second guess trial strategy decisions or impose hindsight views about how current counsel might have [acted] differently." *Rodvold*, 6th Dist. No. H-10-012, 2012-Ohio-619, at ¶36.  Regarding the second proposed assignment, there is likewise no basis in the record for finding prosecutorial misconduct on any of the matters that Rodvold now asserts. In the third assignment, he claims "reversible error" in the trial court's giving of erroneous jury instructions, but fails to identify which instructions he means or specify which points of law in them were erroneous. Moreover, in the original appeal, we found that the trial court had given "thorough and accurate instruction[s]of law." Id. at ¶36-39.  In the fourth proposed assignment, Rodvold confuses the weight of the evidence with its sufficiency, if believed, to prove the elements of the crime charged. He argues that "*[i]f the jury believed* that the events transpired as appellant claimed they did, it could have properly determined that appellant reasonably believed he was in imminent danger of death * * * and acted in self defense." Plainly Rodvold's jury did not believe his defense and found him guilty of murder.  After a thorough review of the trial record and testimony in his first appeal, we rejected his manifest weight challenge to the verdict. *See id.* at ¶47-49.  Nothing in Rodvold's contentions regarding the fourth proposed assignment suggest there was merit to a sufficiency challenge to the state's case. Nor do they convince us that proper appellate counsel was ineffective for not assigning as error insufficiency of the evidence in the direct appeal.

* * *

Rodvold has not met his burden of establishing a "colorable claim of ineffective assistance of counsel on appeal." *Spivey, supra*, at 25. Having reviewed the four proposed assignments on the record before us, we find that none would have had any reasonable probability of success had appellate counsel assigned and argued them in the direct appeal.[142]

---

[142] ECF #11, Attachment 1 at 327-330.

As is well-settled, effective assistance of appellate counsel is guaranteed by the Due Process clause of the Fourteenth Amendment,[143] and claims of ineffective assistance of appellate counsel are reviewed under the two-pronged standard of *Strickland v. Washington*.[144] Under that test, if a federal habeas court finds either prong of the test not met, the writ may not issue.[145] Appellate counsel does not have a constitutional duty to raise every issue requested by a defendant, since the weeding out of weaker issues is recognized as one of the duties of appeals counsel.[146]

In this case, the Ohio court's conclusion that Rodvold's appellate attorney was not constitutionally ineffective under the relevant standard was not an unreasonable application of clearly established federal law. This conclusion is strengthened by recalling that the Ohio court decision is entitled to deference under AEDPA, and the attorney's conduct is entitled to deference under *Strickland.*[147]

Consequently, Ground Three should be denied on the merits after AEDPA review.

---

[143] *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).

[144] *Strickland v. Washington*, 466 U.S. 668 (1984).

[145] *Bell v. Cone*, 535 U.S. 685 (2005).

[146] *Jones v. Barnes*, 463 U.S. 745 (1983).

[147] *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770 (2011).

**3.**   ***Ground Two - alleging a denial of due process by the trial court's denial of a motion to change venue and by the trial court's failure to excuse a juror for cause - should be denied on the merits after AEDPA review because the decisions of the Ohio appeals court in denying these claims was not contrary to nor an unreasonable application of clearly established federal law.***

In this ground for relief, Rodvold raised two distinct sub-claims: (1) that he was denied a fair trial when the trial court denied a motion to change venue due to pretrial publicity, and (2) that he was denied a fair trial when the trial court failed to excuse one juror for cause.  Both sub-claims were considered by the Ohio appeals court, and will be separately addressed here.

*a.*   *Change of venue*

Criminal defendant tried in state court have the right to a fair trial by a panel of impartial and unbiased jurors.[148] A jury is presumed to be impartial, and the burden of showing otherwise is with the one challenging its impartiality.[149] As to a change of venue, a court must grant a change of venue only when pretrial publicity prejudices a defendant's right to a fair trial.[150]

Prejudice from pretrial publicity may be either presumptive or actual but is rarely presumed.[151] Extensive media coverage and knowledge within the community of the crime

---

[148] *Irwin v. Dowd*, 366 U.S. 717, 722-24 (1961).

[149] *Id.* at 723.

[150] *Id.*

[151] *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).

and/or the defendant are insufficient of themselves to create a presumption of prejudice. [152] In fact, a presumption of prejudice exists only in the "extreme case,"[153] such as when a conviction was obtained in a "trial atmosphere that had been utterly corrupted by press coverage."[154]

Where pretrial publicity does not rise to this level of presumed prejudice, a defendant is entitled to a change of venue only upon a showing that such publicity has caused actual prejudice.[155] To discern actual prejudice, trial courts should conduct a "searching voir dire" of prospective jurors, reviewing both the media coverage and jurors' statements, to determine whether "community-wide sentiment exists against the defendant."[156] Negative media coverage alone is insufficient to establish actual prejudice, and even the presence of a juror's preconceived notion as to a defendant's guilt or innocence, without more, does not overcome the presumption of impartiality.[157] Rather, it is sufficient if "a juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."[158]

---

[152] *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002).

[153] *Skilling v. United States*, 561 U.S. 358, 381 (2010).

[154] *Murphy v. Florida*, 421 U.S. 794, 798 (1975).

[155] *Foley*, 488 F.3d at 387.

[156] *Id.*

[157] *Id.*

[158] *Id.*

In addition to this presumption of impartiality on the part of the jurors, deference is owed to the trial judge as regards his conduct of the voir dire on this issue and his ultimate determination as to a change of venue.[159]

The Ohio appeals court considered Rodvold's claim, and denied it after the following analysis:

> {¶27} Appellant argues in his second assignment of error that the trial court abused its discretion and denied him a fair trial by an impartial jury when it overruled appellant's motion for a change of venue.
>
> {¶28} R.C. 2901.12(K), which governs venue in a criminal case relevantly provides:
>> Notwithstanding any other requirement for the place of trial, venue may be changed upon motion of the prosecution, the defense, or the court, to any court having jurisdiction of the subject matter outside the county in which trial otherwise would be held, when it appears that a fair and impartial trial cannot be held in the jurisdiction in which trial otherwise would be held or when it appears that the trial should be held in another jurisdiction for the convenience of the parties and in the interests of justice. See also, Crim.R. 18(B) (providing that "upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending").
>
> {¶29} This court has previously held that "a careful and searching voir dire provides the best test of whether pretrial publicity has prevented the defendant from obtaining a fair and impartial jury from the locality." *State v. Gravelle*, 6th Dist. No. H-07-010, 2009-Ohio-1533. Further, except in rare cases where prejudice may be presumed, a defendant claiming that pretrial publicity has denied him a fair trial must show that one or more

---

[159] *Skilling,* 561 U.S. at 386, 389.

-32-

of the jurors was actually biased. Id. Lastly, "where it appears that jurors' opinions as to the guilt of the defendant are not fixed but would yield readily to the evidence, it is not error to deny a motion for change of venue, in the abscence of a clear showing of an abuse of discretion." Id.

{¶ 30} As indicated above, extensive voir dire was conducted in this case, with wide ranging and comprehensive questioning of the potential jurors by the prosecution, defense counsel and the judge.  All of those individuals who were ultimately admitted onto the jury panel–even those who acknowledged some previous knowledge of the case–clearly indicated that they could be fair and impartial and could fairly judge the case solely on the facts presented at trial. Based on the foregoing, and the fact that appellant has failed to demonstrate actual bias on the part of any juror, we cannot conclude that the trial court abused its discretion in denying appellant's motion for a change of venue. Accordingly, appellant's second assignment of error is found not well taken.[160]

Here, as the Ohio court found, there was no evidence that Rodvold's trial was "utterly corrupted" by press coverage. Rather, Rodvold's arguments almost entirely rest on seeking a finding of prejudice simply on the basis of the amount of coverage, and not on any showing that the jury was unable to overcome any preexisting opinions and render an impartial verdict. Indeed, as the State notes, the jury here actually found Rodvold not guilty of aggravated murder, which would be an unexpected result if the jury was infected with bias against Rodvold. In that regard, it would be odd for the Ohio appellate court to presume prejudice against Rodvold in "a case in which jurors' actions run counter to that presumption."[161]

---

[160] ECF #11, Attachment 1 at 232-234.

[161] Id.

As the state court found, all twelve jurors here stated that they could fairly and impartially judge the case based on the facts and the law presented at trial. Rodvold presented nothing to call that statement into question.

Accordingly, this portion of Ground Two should be denied on the merits.

b.     *Jury challenge*

In the second component of Ground Two, Rodvold claims that he was denied a fair trial when the trial judge failed to excuse one of the jurors for cause.

As noted, the Constitution guarantees the right to a trial by impartial jurors. Voir dire protects this right by exposing possible biases, both known and unknown, among the potential jurors.[162] A perfectly uninformed jury is not required; it is enough that the jury is "capable and willing to decide the case solely on the evidence before it."[163] A federal habeas court's review of a state court's finding of jury impartiality is highly deferential.[164] In that regard, the finding of impartiality is a factual finding, and so is therefore presumed correct on habeas review absent clear and convincing evidence to the contrary.[165]

In addition, the fact that a defendant must use a peremptory challenge to exclude a juror and, therefore, ensure impartiality does not, of itself, present a constitutional issue.[166]

---

[162] *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548 (1984).

[163] *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

[164] *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996).

[165] *See, Gall v. Parke*r, 231 F.3d 265, 309 (6th Cir. 2000).

[166] *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000).

As the Supreme Court has stated, "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment has been violated."[167]

In this case, the Ohio appeals court reviewed Rodvold's claim, denying it after the following analysis:

> {¶20} Appellant argues in his first assignment of error that he was prejudiced by the court's failure to excuse potential juror Nancy Fink for cause, and that such failure denied appellant an impartial jury. We note that although Fink was not excused for cause, defense counsel did eventually use one of its peremptory challenges to eliminate her from the jury pool. Thus, any objection to Fink's presence on the panel was effectively rendered moot.

> {¶21} Appellant next argues that defense counsel's having to exercise on of its peremptory challenges on Fink later deprived the defense of any chance to rid the pool of Cynthia Schimpff, another juror to whom appellant presently objects. This argument is clearly specious, inasmuch as the record demonstrates that defense counsel used only three of its four allowable peremptory challenges. There is nothing in the record to suggest that the remaining challenge could not have been used on Schimpff. Accordingly, we find that any error that there may have been on the part of the trial court in failing to dismiss Fink for cause–and we do not, in fact, find that there was any such error–had no unfairly prejudicial effect upon the appellant.

> {¶22} Appellant's objection to Schimpff's service on the jury is based on appellant's claim that Schimpff was uncertain as to whether she could be fair. During individual voir dire, Schimpff indicated that she thought she could set aside anything regarding the case that she may have heard or read outside the court and could make her decision based solely on the facts and evidence presented at trial. When asked by the court if she thought she

---

[167] *Ross v. Oklahoma,* 487 U.S. 81, 88 (1988).

could be fair to the state and to the appellant in making that decision, she answered in the affirmative.

{¶23} Later, when discussing possible scheduling conflicts, Schimpff mentioned that her youngest daughter was scheduled to have a C-section in the coming days and that Schimpff would like to be present for the procedure. When asked by the state if she could pay attention and be fair if asked to sit on the jury, she answered, "I could be, yes." During follow -up questioning by defense counsel, Schimpff acknowledged that if "things began to develop" for her daughter at an earlier time than expected, she would probably be distracted  but would try to be fair.  In fact, Schimpff was seated and the case was over before the baby was born.

{¶24} The Supreme Court of Ohio in *State v. Perez*, 124 Ohio St.3d. 122, 2009-Ohio-6179, 920 N.E.2d 104 ¶ 140, relevantly stated the following regarding challenges for cause:

> On a challenge for cause, "[t]he ultimate question is whether the 'juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed.'" White v. Mitchell (C.A.6, 2005), 431 F.3d 517, 538, quoting Patton v. Yount (1984), 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81L.Ed.2d 847. A trial  court's resolution of a challenge for cause  will be  upheld  on  appeal  unless  it  is unsupported by substantial testimony, so as to constitute an abuse of discretion. State v. Tyler (1990), 50 Ohio St.3d 24, 31, 553 N.E.2d 576.

{¶25} R.C.2313.42(J) provides that "good cause" exists to challenge  any  person  called  as  a  juror  if  that  individual "discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." R.C. 2945.25(B) relevantly provides that an individual called as a juror in a criminal case may be challenged for cause if "he is possessed of a state of mind evincing enmity or bias toward the defendant or state." *See also* Crim.R.24(C)(9) (providing that a person called as a juror may be challenged for cause if the juror

-36-

is possessed of a state of mind evincing enmity or bias toward the defendant or the state).

{¶26} In the instant case, the record supports the trial court's ruling on the challenge for cause.  Schimpff clearly indicated that she could set aside anything regarding the case that she may have heard or read outside the court and that she could make her decision based only on the facts and the evidence. She further indicated that she could be fair to both the state and the appellant in making that decision.  Based on the foregoing, we conclude that the trial court's findings were supported by sufficient substantial testimony and, therefore, did not constitute an abuse of discretion. See *Perez, supra*. Accordingly, appellant's first assignment of error is found not well taken.

As the Ohio court explained, the record indicates that Juror Schimpff stated her belief that she could be fair and impartial in deciding the case. Further, the fact that potential juror Fink was excused by a peremptory challenge is not a constitutional issue. Moreover, as the appellate court noted, the use of a peremptory challenge to exclude Fink did not deprive Rodvold of all available challenges; an additional challenge remained if defense counsel had desired to employ it to excuse Schimpff.

In sum, the analysis of the Ohio appeals court in denying this aspect of Ground Two was not contrary to clearly established federal law. Accordingly, this component of Ground Two should be denied on the merits for the reasons set forth above.

**Conclusion**

For the reasons stated, I recommend that the *pro se* petition of Steven J. Rodvold for a writ of habeas corpus under 28 U.S.C. § 2254 be dismissed in part and denied in part as is more fully set forth above.

Dated: February 9, 2016                                s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[168]

---

[168]  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).